UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

JULIE HALEY,                          )
                                      )
            Plaintiff,                )
                                      )
      vs.                             )          Case No. 2:13CV29 CDP
                                      )
CAROLYN W. COLVIN,                    )
Commissioner of Social Security,      )
                                      )
            Defendant.                )

## MEMORANDUM AND ORDER

This is an action for judicial review of the Commissioner's decision

denying Julie Haley's applications for disability insurance benefits under Title II

of the Act, 42 U.S.C. §§ 401, et seq., and for supplemental security income (SSI)

benefits based on disability under Title XVI of the Social Security Act, 42 U.S.C.

§§ 1381, et seq.  Section 1631(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), and §

205(g) of the Social Security Act, 42 U.S.C. § 405(g), provide for judicial review

of a final decision of the Commissioner under Title II and Title XVI.  Haley

claims she is disabled because of back pain, depression, female problems,

migraine headaches, asthma, rapid heartbeat, and blurred vision.  Because I find

that the decision denying benefits was not supported by substantial evidence, I

will reverse the decision of the Commissioner.

## Procedural History

Haley filed her applications for benefits on February 20, 2009. Haley alleges disability beginning January 15, 2006, at age 27. Her applications were denied initially, and on July 18, 2011, following a hearing, an ALJ issued a decision that Haley was not disabled. The Appeals Council of the Social Security Administration (SSA) denied her request for review on January 15, 2013. Therefore, the decision of the ALJ stands as the final decision of the Commissioner.

## Evidence Before the Administrative Law Judge

### Application for Benefits

Haley claimed that she was unable to work due to back injury, depression, female problems, migraines, asthma, rapid heart beat, and blurred vision. (Tr. 196). She applied for benefits via telephone. Her interviewer noted that Haley "[a]t times sounded discouraged." (Tr. 193).

In her Function Report completed on March 18, 2009, in connection with her Application for Disability Benefits, Haley stated that she gets up around 7:30 a.m. to help get the kids off to school, then she has to "take something" to help with the pain and to sleep. Her husband and sister also help take care of the kids and the dog. Haley can no longer bend, sit, or walk, and has trouble falling

asleep.  She can't put on her socks or shoes, and her legs go numb if she tries to shave them.  Haley's husband reminds her to take her medications.  Haley can prepare simple meals, like sandwiches or frozen dinners, but her sister does most of the cooking since she can't stand for long periods of time.  Haley can put away laundry and dishes, and she can vacuum and mop but it takes her a long time.  Her sister helps out with the chores and drives Haley to the store.  Haley can no longer drive because of headaches and back pain, and she forgets things.  She likes gardening, hanging out with her children, and watching television, although it hurts to sit still for long.  Haley claims that her depression makes it hard to deal with people.  Her conditions affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, and concentrate.  Haley can walk for less than a half of a mile before needing to rest for 15-20 minutes and can only pay attention for 30 minutes.  Haley does not handle stress well and "fear[s] everything."  (Tr. 203-13).

Haley's sister, Jacqueline Traver, completed a Function Report-Third Party in connection with her sister's application for benefits.  Traver indicated that she helps her sister daily with taking care of her children and household chores.  She stated that her sister "takes awhile to get going in morning . . . ."  Traver noted that her sister has trouble walking and bending, that it hurts her to do the

cooking, and that she "is miserable" when she tries to sleep. Travers explained that her sister can't put her shoes on or shave her legs. Her sister can prepare simple meals and help out with laundry, but she doesn't drive and has pain when she bends, lifts, stands, or sits for a long time. Her sister has trouble concentrating but enjoys watching television with her children. She goes to church but otherwise does not really leave the house. Traver said that her sister has trouble lifting less than 15 pounds, sitting, standing, and walking. Traver believes that her sister's level of concentration varies on a daily basis, and that she has anxiety and depression. Traver also explained that her sister cries because she is in pain and that she gets upset because she is unable to care for her children and has to rely on others. (Tr. 214-222).

## Medical Records

From September 10, 2007 through July 21, 2010, Haley was treated by Julia Knapp, FNP, at Total Family Health Care. On September 10, 2007, Haley saw Knapp for vaginal bleeding and cramping. She took no medication, and her physical examination was normal except that Haley was obese and anxious. Haley's medical history was reported as chicken pox, migraine headache, depression, back/feet pain, lack of bladder control, poor circulation, and irregular heart beat. Haley was diagnosed with irregular periods and given hormones. (Tr.

- 4 -

270-71).  Haley had follow-up appointments on October 15, 2007, November 5, 2007, and January 25, 2008, but Ms. Knapp made no assessments during these visits.  (Tr. 267-69).

During a follow-up visit on April 14, 2008, Haley reported feeling "just miserable" from bleeding and cramping.  Her appearance was tearful, but otherwise her physical examination was normal.  Ms. Knapp diagnosed vaginal bleeding  and ordered diagnostic testing, which revealed uterine cysts.  (Tr. 265, 276).  Ms. Knapp then referred Haley to gynecologist Randall Tobler, M.D. for examination and treatment on April 21, 2008.  (Tr. 265, 276, 308-09).

On May 1, 2008, Haley saw Dr. Tobler for vaginal bleeding.  Dr. Tobler reported her symptoms as unremarkable except for some hot flashes and night sweats and urinary frequency.  Upon examination, Dr. Tobler noted that Haley was obese, weighing 322 pounds, apparent normal thyroid, acne, facial hair, normal ovaries, and normal lungs and heart.  Dr. Tobler diagnosed metromenorrhagia due to chronic and/oligo ovulation, possibly due to secondary hypothyroidism.  Dr. Tobler recommended diagnostic testing and prescribed Ortho-Cyclen.  (Tr. 289-90).

On May 15, 2008, Dr. Tobler saw Haley to review her lab results.  Impression was pre-diabetes insulin resistant, secondary hyper androganemia and

fatigue and anovulation with metrorrhagia, secondary obesity, and increased risk

for uterine hyperplasia. He recommended that she read low carbohydrate diet

books and walk 20 minutes per day. He also prescribed Flagyl for her bacterial

vaginosis. (Tr. 285).

Dr. Tobler performed an endometrial biopsy on Haley on June 19, 2008 to

evaluate her polymenorrhea and metrorrhagia. The findings were benign. Haley

reported that use of Ortho-Cyclen reduced the amount of bleeding. Dr. Tobler

advised that she continue using the medication and referred her back to Ms.

Knapp for evaluation of Haley's reported shortness of breath with exercise. (Tr.

249).

Ms. Knapp saw Haley for asthma on June 25, 2008. Haley reported her

medications were Sprintec and Prozac. Her physical examination was normal

except for wheezing in the lungs. Ms. Knapp's assessment was wheezing,

asthma, diarrhea, vaginal bleeding, and irregular periods. For the wheezing, Ms.

Knapp prescribed Singular, Advair, and ProAir. (Tr. 261-62). No changes were

made to Haley's medications during follow-up appointments on July 23, 2008,

and August 4, 2008. (Tr. 259-60).

Ms. Knapp saw Haley again on August 14, 2008, after an hospital visit on

August 7, 2008, for a broken rib and twisted ankle. Haley reported that she fell

on a concrete slab at home after feeling dizzy. She was treated at the hospital with Vicodin, ibuprofen, and Bactrim for a urinary tract infection. Haley told Ms. Knapp that she was in less pain than before and that she was now able to take deep breaths without sharp pain. However, she still reported dizziness and headaches. Her medications were listed as Singulair, Advair, ProAir, Sprintec, and Prozac. Haley was noted to be very tearful upon examination. Ms. Knapp's assessment was depression with anxiety, and her plan was to continue Haley's prescription for Prozac. (Tr. 257-58).

Haley saw Ms. Knapp on January 12, 2009, after a car accident sent her to the emergency room. Haley reported back and neck pain and was treated at the hospital for contussions. She was prescribed Fleveril and Darvocet but was unable to afford Darvocet. Haley stated that she was feeling stiff. Her medications were listed as Inderal, Prozac, Sprintec, and Flexeril. Upon examination, Ms. Knapp noted that Haley was uncomfortable due to pain with movement and observed back tenderness with palpation of the thoracic spine. She observed no edema. Ms. Knapp's assessment was back pain and muscle pain from a motor vehicle accident. She prescribed ibuprofen and muscle relaxers. (Tr. 255-56).

Haley saw Dr. Tobler on January 15, 2009, for consideration of a

hysterectomy due to failed hormone therapy. Haley had lapsed on her exercise program because she had been unable to afford her prescribed inhalers to combat her shortness of breath. Review of symptoms included progressive weight gain, chronic mild fatigue, migraine headaches, dyspnea on exertion without wheezing, chronic constipation, occasional urinary leakage, facial acne, mild to moderate fatigue, occasional hot flashes and night sweats, memory loss, mood swings, and intermittent bleeding. Dr. Tobler examined Haley and found her to be obese, with mild lower back tenderness diffusely, bilaterally, and in the midline. He noted a mild paraspinal spasm and trace bipedal edema in the extremities. Dr. Tobler's impression was menometrorrhagia despite oral contraceptive therapy, morbid obesity, shortness of breath, either restrictive, but can't rule out cardiac problem, hyperinsulinemia - rule out diabetes, mild hyperandrogenemia, and degenerative disc disease. He recommended a hysterectomy. (Tr. 280-81).

An x-ray of Haley's lumbar spine taken on February 16, 2009, showed lumbar spondylosis and lower thoracic spondylosis and recommended an MRI if concerned about spinal or foraminal stenosis. (Tr. 277). Haley saw Ms. Knapp the same day, complaining of numbness in her legs and pain when walking. Haley reported tailbone pain since the birth of a child in 2001 and complained that her legs go numb when she bends over. Haley stated that she got no relief

from Flexeril or Darvocet and that Darvocet made her sleepy.  Haley rated her pain from a six to seven at best to a 10 out of 10 at its worst.  Haley told Ms. Knapp that her pain is in her low back and is at its worse when she gets up.  Haley reported that the pain is mildly relieved by heat.  Upon examination, Ms. Knapp noted that Haley was uncomfortable due to pain and obese.  Haley was unable to lie down with her legs flat due to low back pain, but she could walk on her toes and heels.  She denied numbness in lower extremities.  Ms. Knapp's assessment was low back pain.  She recommended ibuprofen and gentle stretching with frequent changes in position.  (Tr. 253-54).

Haley saw Ms. Knapp again on March 12, 2009, for back pain.  Haley reported constant, radiating low back pain, aggravated by flexion, with numbness if she bends over or sits too long.  Her medications were listed as Prozac, Sprintec, Flexeril, and Darvocet.  Ms. Knapp noted that Haley was unable to climb onto the exam table due to back pain.  She assessed back pain and radicular syndrome of lower limbs.  Ms. Knapp prescribed Ultram and an MRI.  (Tr. 298-99).[1]

On April 23, 2009, Haley underwent a pre-operative cardiac evaluation.  She was given a treadmill stress test, which was terminated due to dyspnea and

---

[1]No MRI results appear in the record.

fatigue.  Haley had poor exercise tolerance for her age. The test results revealed a normal sinus rhythm, blood pressure response to exercise, and clinical response to treadmill stress.  Haley's electrocardiogram was negative for ischemia, and no significant arrhythmias occurred during stress or recovery.  (Tr. 334).  Thereafter, on April 29, 2009, Haley underwent a super cervical hysterectomy, a bilateral salpingooophorectomy, and adhesiolysis performed by Dr. Tobler without complication.  (Tr. 328-29).

On May 6, 2009, a physical residual functional capacity assessment was performed in connection with Haley's application for benefits by a single decisionmaker.  In this form, Haley's primary diagnosis was listed as lumbar spondylosis, lower thoracic spondylosis.  Haley's complaints of back pain and numbness in her lower extremities were noted, with increased symptoms after her car accident.  Her irregular periods and migraine headaches were also considered.  Haley's exertional limitations were listed as follows: she could occasionally lift and/or carry 20 pounds; frequently lift 10 pounds; stand and/or walk about six hours in an eight hour workday; and was otherwise unlimited in her ability to push and/or pull.  Haley could occasionally climb ramps or stairs, but never ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, or crawl.  She should avoid concentrated exposure to extreme cold,

vibrations, and hazards.

On August 20, 2009, Haley returned to Ms. Knapp to discuss changing her migraine medication. Haley reported that Propanolol did not work for her headaches. Ms. Knapp discussed with Haley how weight loss could significantly improve her quality of life and help with her back and arthritis pain. Haley told Ms. Knapp she continued to have diarrhea and cramping after her hysterectomy. Physical examination yielded normal results. Ms. Knapp assessed headache, diarrhea, and migraine, other, without mention of intractable migraine. (Tr. 332).

Haley next saw Ms. Knapp on July 8, 2010, for heel pain and some swelling on her right forearm. Upon examination, Ms. Knapp noticed that Haley's feet were stained from going barefoot and that her forearm was tender to palpation over an area of soft tissue edema. Ms. Knapp told Haley that she needed to wear good support shoes. Ms. Knapp assessed pain in limb and radicular syndrome of lower limbs. (Tr. 333).

Haley returned to Ms. Knapp's office on July 21, 2010, complaining of a urinary tract infection. Ms. Knapp assessed low back pain, urinary frequency, and urinary urgency. (Tr. 335).

On July 26, 2010, Haley went to the Moberly Regional Medical Center for back pain. She reported having chills, constipation, nausea, problems walking

and urinating, light-headedness, and dizziness. Her physical examination was normal. Haley was in no acute distress, her back was not tender, and she had a painless range of motion in her back. Straight leg raising test was negative. She had no tenderness and a full range of motion in her extremities. The diagnosis was low back pain. The doctor noted "expect some pain" and prescribed activity as tolerated, Flexeril, and Motrin. She was sent home the same day. (Tr. 397-402).

On November 5, 2010, Haley was examined by Norbert L. Richardson, M.D., for weight-loss surgery options. Haley was 5 feet, 2 inches tall and weighed 310 pounds with a body mass index of 56. Dr. Richardson noted that Haley had multiple medical problems associated with morbid obesity, including arthritis, asthma, exertional dyspnea, arthralgias, back pain, stress incontinence, sleep apnea, depression, and anxiety. However, Haley stated that her depression and anxiety were "well-controlled at this time." Haley denied any history of suicide attempts, psychiatric hospitalizations, disability due to mental health problems, or any difficulties coping with major life changes. Dr. Richardson noted that she was alert, oriented, and pleasant, with normal mood, affect, judgment, speech, and insight. Her examination was within normal limits, and Dr. Richardson recommended bariatric surgery for treatment of Haley's morbid

obesity.  (Tr. 422-23).

On March 1, 2011, Dr. Richardson performed a laparoscopic gastric bypass surgery with pain pump placement on Haley.  The surgery was performed without complication, and Haley was discharged on March 3, 2011.  (Tr. 338-42).

On March 13, 2011, Haley went to the Moberly Regional Medical Center emergency room for treatment of a urinary tract infection.  She had fever and chills, but otherwise her physical examination was within normal limits.  Haley was given a prescription for Bactrim and discharged.  (Tr. 382-84).

The next day, Haley returned to the emergency room complaining her surgical wound was painful, red, and infected.  Other than her wound, Haley's physical examination was within normal limits.  The clinical impression was wound infection with superficial cellulitis.  Haley was prescribed Cephalexin and discharged the same day.  (Tr. 364-66).

Haley presented to the Moberly Regional Medical Center emergency room on March 28, 2011, with symptoms of nausea and vomiting.  She claimed to have had these symptoms since her gastric bypass surgery.  Haley was noted to be in mild distress and mildly anxious.  Examination of the abdominal area revealed moderate tenderness to palpation in the periumbilical region and hyperactive

bowel sounds, but no guarding, rebound tenderness, or palpable masses. Her scars were hearing well. Haley demonstrated normal behavior appropriate for her age and situation, and she was able to walk and perform all activities of daily living without assistance. Haley was alert, oriented, and able and willing to learn. The clinical impression was vomiting and dehydration. She was advised to use ibuprofen and acetaminophen and was sent home the same day. (Tr. 352-53, 359).

Haley saw Allan D. Macintyre, D.O., on April 21, 2011, for her gastric bypass follow-up appointment. She weighed 265 pounds, with a weight loss of 49 pounds since the surgery. Haley was compliant with the vitamin and exercise regimens, but stated she had difficulty with fluid and protein intake. She was still experiencing nausea, vomiting, and difficulty swallowing. Haley denied any problems with her vision, breathing, chest pain, dizziness, headaches, joint pain, reflux, heartburn, abdominal pain, constipation, urinary stress, incontinence, urgency, frequency, anemia, diabetes, bruising, or anemia. She did complain of diarrhea, back pain, and itching. Upon examination, Dr. Macintyre noted that Haley was not in acute distress and had no edema in her extremities, tenderness in her abdomen, or shortness of breath. Her speech was fluent and clear, gait was normal, and she was alert and oriented. Dr. Macintyre referred Haley for an

esophagogastroduodenoscopy (EGD) to rule out stenosis.  (Tr. 343-45).

On June 20, 2011, Haley underwent a laparoscopic cholecystectomy due to abdominal pain and gallstones.  Her pre-operative EGD was normal, but an ultrasound showed cholelithiasis.    She was discharged later that day with instructions to gradually resume normal activities and to lift no more than 25 pounds.  (Tr. 413-18, 346-48).

Haley saw registered dietician Abigail Klemme on July 6, 2011, for a follow-up appointment after her gastric bypass surgery.  She weighed 231 pounds and had a body mass index of 42.  Haley reported her nausea and vomiting had improved since her cholecystectomy.  Haley was given nutrition counseling and told to take a daily multivitamin and calcium supplement.  (Tr. 410-11).

Testimony

The ALJ held a hearing on Haley's application for benefits on June 11, 2011.  Haley appeared for the hearing pro se and testified.  Her sister also testified.  At the time of the hearing, Haley was 32 years old and weighed  245 pounds.  She lives with her husband and five children.  Haley graduated from high school.  She worked as a line worker in a factory, a cook and cashier at a convenience store, and a child care provider.  She continues to provide some

home child care for her sister's children.  When asked about her severe

impairments, Haley mentioned complications from her gastric bypass surgery

and her gallbladder, but she hoped these problems would not last more than one

year.  She claimed her back limits her ability to work because she cannot sit or

stand very long, and her right side goes numb when she walks.  Bending and

squatting also pulls her back in the same spot.  Pain medication and warm baths

help with the pain.  Haley's back hurts when she wakes up, then it feels better for

a couple of hours before it starts hurting again.  Her back pain has gotten worse

since she fell on some ice.  In 2009, Haley weighed 400 pounds.  Haley and her

family make simple meals.  She cannot wash dishes or mop, but she can dust and

sweep and help vacuum the floors.  She does not make the beds, do laundry,

perform yard work, or take care of the family dog.  Haley can drive a car, but she

usually doesn't go anywhere by herself.  Haley cannot bathe her children, but she

can help them get dressed.  She goes to the grocery store about once a month.

Haley attends church and walks for exercise.  Her sister visits her at home.  She

can count change, balance her checking account, and care for her personal needs.

She reads the newspaper and can use a computer and cell phone.  Haley can pick

up a gallon of milk with her left hand but not her right.  She can't lift her

daughter who weighs 35 pounds.  She can only sit for five or ten minutes before

her leg starts to go numb and she has to stand up. She can stand for 20-25 minutes as long as she can move back and forth. She gets along with others pretty well. (Tr. 34-51).

Haley's sister, Jaqueline Traver, also testified at the hearing. She lived with her sister and still sees her every day. She agreed with her sister's testimony and seemed surprised that Haley was able to sit through the hearing. Traber hasn't seen a big change in Haley's ability to function since she lost weight. (Tr. 52-55).

A vocational expert also testified as follows in response to hypothetical questions posed by the ALJ:

> Q: [I]f you would consider a hypothetical individual the same age, education, and vocational background as the claimant with the exertional capacity to perform sedentary work as defined by the regulations who can only occasionally climb ropes and stairs, balance, and stoop; who never should be climbing ropes, ladders, or scaffolds, kneeling, crouching, or crawling; probably should be doing no work overhead; who's going to have to avoid concentrated exposure . . . to cold . . . to vibration and to work place hazards like dangerous moving machinery, unprotected heights, and open flames. I think I'll also put in a limitation as to loud noise — no concentrated exposure to that. And then finally, probably most importantly, we're going to need a sit/stand option here; that the work would have to be able to [be] performed, essentially, sitting or standing. We'll start with, say, 20 minutes down and 10 minutes up at a time. Any jobs existing that such a hypothetical [individual] could perform?

A: Yes . . . The first example is document preparer . . . Next we have administrative support worker . . . And the third example is an order clerk.

Q: Okay. And if due to poor memory, the hypothetical individual could only understand, remember, and carry out simple instructions, make only simple work-related decisions and deal with only occasional changes in work processes and environment; would that have any effect on these jobs?

A: No.

Q: Okay. If the hypothetical individual were absent from the work place due to impairments or treatments, say, once every two weeks, what impact would that have?

A: That would preclude those jobs.

Q: And would there be any jobs?

A: No.

Q: And what if it is they just came in late or had to leave early due to pain or whatever once every two weeks, what would that do?

A: That also would preclude those jobs.

Q: Okay. And finally, if they had to take extra breaks during the work day — say, at least one break every 15 minutes over and above the morning and afternoon break and lunch period, what effect would that have?

A: That also would preclude those jobs.

Q: And would there be any jobs?

A: There would be no work.

(Tr. 58-60).

Twice during the hearing, the ALJ asked Haley if there was anything else she wanted him to know before he made his decision. The first time, Haley told him that she had "an awful memory." (Tr. 51). The second time, Haley said "that it's awful being a parent and not being able to provide for your children." (Tr. 61). At no point in the hearing did Haley specifically mention depression.

## Legal Standard

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, id., or because the court would have decided the case differently. Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." Singh v.

Apfel, 222 F.3d 448, 451 (8th Cir. 2000) (quoting Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999)).  Where the Commissioner's findings represent one of two inconsistent conclusions that may reasonably be drawn from the evidence, however, those findings are supported by substantial evidence.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001) (internal citation omitted).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) the credibility findings made by the Administrative Law Judge;
>
> (2) the education, background, work history, and age of the claimant;
>
> (3) the medical evidence from treating and consulting physicians;
>
> (4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments;
>
> (5) any corroboration by third parties of the plaintiff's impairments; and
>
> (6) the testimony of vocational experts, when required, which is based upon a proper hypothetical question.

Brand v. Secretary of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in social security regulations as the inability to engage

in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. § 42 U.S.C. 416(i)(1); § 42 U.S.C. 1382c(a)(3)(A); § 20 C.F.R. 404.1505(a); 20 C.F.R. 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five step procedure.

First, the Commissioner must decide if the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or on medical facts alone, and the claimant has a severe

impairment, the Commissioner reviews whether the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. § 20 C.F.R. 404.1520; § 20 C.F.R. 416.920.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

Id. at 1322.  When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding.  Casey v. Astrue 503 F.3d 687, 696 (8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding.  Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).

## The ALJ's Findings

The ALJ issued his decision that Haley was not disabled on July 18, 2011. He found that Haley had the severe impairments of disorders of the thoracic and lumbar spine, discogenic and degenerative, status post January 2009 motor vehicle accident, with chronic pain and radiculopathy, recurrent vaginal bleeding episodes, resolved by hysterectomy, morbid obesity, status post March 2011 gastric bypass surgery, headaches, and cholelithiasis.   The ALJ's decision does not mention or discuss Haley's depression.  The ALJ found that Haley retained the residual functional capacity to perform sedentary work, with the limitations to only occasionally climb ramps and stairs, balance, and stoop, to never kneel, crouch, crawl, or climb ropes, ladders, or scaffolds, to perform no overhead work, to avoid concentrated exposure to cold, vibration, loud noise, and workplace hazards, to be able to stand for 10 minutes after sitting for 20 minutes,

to understand, remember, and carry out simple instructions, to make only simple decisions, and to deal with only occasional changes in work processes and environment. In fashioning Haley's RFC, the ALJ determined that her impairments could be expected to produce some of his alleged symptoms; however, he concluded that Haley's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible to the extent they were inconsistent with her RFC. The ALJ concluded that Haley's problems with respect to her vaginal bleeding were resolved by hysterectomy, and that her post-surgical complications from her gastric bypass and gallbladder surgeries, while decreasing her level of functioning temporarily, did not meet the durational requirement for a finding of disability. The ALJ also noted the conservative treatment for Haley's back problems and the lack of treatment since 2010. After finding that Haley was unable to perform her past relevant work, the ALJ relied on the vocational expert's testimony and concluded that Haley was not disabled.

## Discussion

Haley contends that the ALJ improperly determined her severe impairments at step 2 of the sequential evaluation process because he failed to consider her alleged mental impairments. Haley claims the ALJ erred by failing

to consider her depression as a severe impairment.  Because the ALJ failed to even consider Haley's depression in his analysis, the decision must be reversed and remanded for further proceedings.

Here, there is no doubt that Haley claimed depression as one of her impairments.  She alleges it in her application for benefits and function report, where she explained that her depression made it hard to deal with others, concentrate, or complete tasks.  Haley reported difficulties remembering and handling stress and complained that she feared everything.  Haley stated that her depression was worsening in March of 2009.  Haley's sister also confirmed that Haley suffered from depression and anxiety in her third party function report.  Traver explained that her sister had trouble concentrating and gets upset because she is unable to care for her children and has to rely on others.  Indeed, the initial denial of Haley's application for benefits acknowledged that Haley was claiming depression as one of her impairments.  Although she did not specifically mention depression during her hearing, Haley – who appeared <u>pro se</u> – did tell the ALJ that she had an awful memory and "that it's awful being a parent and not being able to provide for your children."[2]

---

[2]The Commissioner does not argue that Haley's failure to specifically mention depression at the hearing waived her right to allege it as one of her impairments.

There is also evidence of Haley's depression in her medical records. During an examination on September 10, 2007, Ms. Knapp noted that Haley had a medical history of depression and seemed anxious, and she noted Haley's history of depression during the remainder of Haley's visits. Haley was regularly treated by Ms. Knapp, who diagnosed her with depression with anxiety on August 14, 2008 and continued her prescription of Prozac. Haley's medical records indicate that she began taking psychotropic medications on June 25, 2008 and continued to take them intermittently thereafter. Haley demonstrated a tearful affect on August 14, 2008, and during a March 28, 2011, visit to the emergency room, Haley appeared "mildly anxious." Dr. Richardson also noted Haley's history of depression and anxiety during an examination on November 5, 2010, although she felt it was "well-controlled at this time."

Despite the evidence of Haley's depression in the record, the ALJ does not even mention depression in his decision denying benefits. In doing so, he substantially erred. At step two of the sequential evaluation process, an ALJ determines the medical severity of a claimant's impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A severe impairment is one which significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Although Haley has "the burden of showing a severe

impairment that significantly limited her physical or mental ability to perform

basic work activities, . . . the burden of a claimant at this stage of the analysis is

not great." <u>Caviness v. Massanari</u>, 250 F.3d 603, 605 (8th Cir. 2001). The

Commissioner acknowledges the ALJ's failure to consider Haley's depression in

his decision but argues that this error is harmless. A failure to find severe

impairments at Step 2 may be harmless where the ALJ continues with the

sequential evaluation process and considers all impairments, both severe and

non-severe. <u>See</u>, <u>Lorence v. Astrue</u>, 691 F. Supp. 2d 1008, 1028 (D. Minn.

2010); <u>Johnson v. Commissioner of Social Security</u>, 2012 WL 4328413, *21 (D.

Minn. July 11, 2012) (collecting cases). Here, however, I cannot apply the

harmless error standard because the ALJ did not consider Haley's depression at

all -- not at Step 2, where he should have determined whether Haley's depression

was a severe or non-severe impairment, and not later in the sequential evaluation

process, where he should have at least considered evidence of Haley's

depression, together with all impairments both severe and non-severe, in

determining her RFC. While it is true that there is evidence in the record that

Haley's depression had improved over time and could be considered non-severe,

there is also substantial evidence in the record as a whole to support a finding

that her depression was a severe impairment. "It is for the administrative fact-

finder, in the first instance, to make this kind of choice, guided by the proper legal standard." Caviness, 250 F.3d at 605. "Courts should not make this determination in the first instance, unless the case is clear beyond substantial doubt, which this case is not." Id.

As in Caviness, the ALJ's error is not harmless, especially where the ALJ did not fully credit Haley's testimony about the duration and severity of her limitations. Indeed, the ALJ's discounting of Haley's complaints without any discussion of her depression resulted in a credibility analysis which failed to examine the possibility that plaintiff's mental impairment aggravated her perception of pain. See, Delrosa v. Sullivan, 922 F.2d 480, 485-86 (8th Cir. 1991) (on remand, ALJ advised to consider aggravating factor posed by possibility that claimant's perception of pain is exacerbated by psychological impairment). In doing so, the ALJ substantially erred. The case must be remanded so that the ALJ may evaluate the nature and severity of Haley's depression. Because a failure to consider evidence of Haley's depression also resulted in a decision which fails to demonstrate that the ALJ considered all of the evidence under the standards set out in Polaski, this cause should also be remanded to the Commissioner for an appropriate analysis of Haley's credibility

in the manner required by and for the reasons discussed in <u>Polaski</u>.[3]

Haley also argues that the ALJ erred in his RFC determination. Where, as here, an ALJ errs in his failure to consider one of claimant's impairments and in his determination to discredit a claimant's subjective complaints, the resulting RFC assessment is called into question inasmuch as it does not include all of the claimant's limitations. <u>See</u> <u>Holmstrom v. Massanari</u>, 270 F.3d 715, 722 (8th Cir. 2001). RFC is defined as "what [the claimant] can still do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." <u>Lauer v. Apfel</u>, 245 F.3d 700, 703 (8th Cir. 2001). The Eighth Circuit has noted the ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an

---

[3]Reversal is required because the ALJ's decision is not supported by substantial evidence on the record as a whole. The ALJ's error is not, as argued by the Commissioner, a mere "deficiency in opinion writing." However, because the ALJ did not even consider evidence of Haley's mental impairment, he did not use the required psychiatric review technique analysis. "Psychiatric review technique analysis is required to be conducted and documented at each level of the review process, including the ALJ level." <u>Nicola v. Astrue</u>, 480 F.3d 885, 887 (8th Cir. 2007) (citing 20 C.F.R. § 416.920a(a)-(e)). "The technique involves determination of whether there is a mental impairment followed by a rating of the degree of functional limitation resulting from the mental impairment." <u>Nicola</u>, 480 F.3d at 887. Upon remand, the ALJ will have the opportunity to either complete the written form or include the required analysis within his written decision. <u>See</u> <u>id.</u>

individual's own description of his limitations.  <u>McKinney v. Apfel</u>, 228 F.3d 860, 863 (8th Cir. 2000) (citing <u>Anderson v. Shalala</u>, 51 F.3d 777, 779 (8th Cir. 1995)).  This includes a consideration of all of Haley's medically determinable severe and non-severe impairments, including her depression.  Haley also argues that remand is required because the ALJ did not consider any medical evidence when fashioning her RFC.  Because he did not, Haley contends that the ALJ failed in his duty to develop the record.  A claimant's RFC is a medical question, and some medical evidence must support the ALJ's RFC determination. <u>Krogmeier v. Barnhart</u>, 294 F.3d 1019, 1023 (8th Cir. 2002).  The ALJ is "required to consider at least some supporting evidence from a [medical professional]" and should therefore obtain medical evidence that addresses the claimant's ability to function in the workplace.  <u>Hutsell v. Massanari</u>, 259 F.3d 707, 712 (8th Cir. 2001) (internal quotation marks and citation omitted).  An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand.  <u>Id.</u>  It is somewhat unclear what medical evidence, if any, the ALJ relied upon in fashioning Haley's RFC.  However, because the ALJ did not take into consideration any evidence of Haley's depression when formulating her RFC, reversal is required.  Upon remand, the Commissioner will be given the opportunity to review all the

evidence under the appropriate standards when making her RFC determination. Now that Haley is represented by counsel, her attorney can request any consultative examinations that may be required or present any additional medical evidence that should be considered in formulating her RFC.

I find that the ALJ did not fulfill his duty of properly evaluating the evidence presented. As a result, I cannot conclude that there is substantial evidence on the record as a whole to support the ALJ's decision.

## Conclusion

Because substantial evidence in the record as a whole does not support the ALJ's decision, this matter is remanded to the Commissioner for a consideration of Haley's claim in light of all medical records on file, including an evaluation of the opinions of Haley's treating and any consulting physicians under the appropriate standards, and development of any additional facts as needed. The Commissioner should reevaluate Haley's physical and mental impairments and complaints in accordance with Polaski and order additional testing or consultative examinations, if necessary, assess a residual functional capacity consistent with the medical and other evidence, and obtain vocational expert testimony if necessary to determine whether Haley is capable of performing work in the national economy with her limitations. Therefore, I reverse and remand

pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings

consistent with this Order.  See Buckner v. Apfel, 213 F.3d 1006, 1010 (8th Cir.

2000) (finding that remand under sentence four of 42 U.S.C. section 405(g) is

proper when the apparent purpose of the remand was to prompt additional fact-

finding and further evaluation of existing facts).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

reversed and the case is remanded to the Commissioner pursuant to sentence four

of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum

and Order.

A separate Judgment in accord with this Memorandum and Order is

entered this date.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 13th day of January, 2014.